# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| WILLIAM NALLY, JR. (N-51494), | ) |
| | ) |
| Plaintiff, | ) Case No. 17-cv-2902 |
| | ) |
| v. | ) Judge Sharon Johnson Coleman |
| | ) |
| SALEH OBAISI, M.D., RONALD SHAEFER, M.D., PARATHASARATHI GHOSH, M.D., RICHARD SHUTE, M.D., IMHOTEP CARTER, M.D., and WEXFORD HEALTH SOURCES, INC., | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## ORDER

Wexford Health Sources, Inc.'s motion to dismiss [40] is granted in part and denied in part. The plaintiff's *Monell* claims premised upon policies of maintaining insufficient staffing levels, failing to properly process requests for medical care, failing to discipline employees who neglected inmates' serious medical needs, failing to require proper documentation, and delaying or cancelling scheduled appointments are dismissed without prejudice. Wexford's motion is denied in all other respects.

## STATEMENT

At the times relevant here, Nally was incarcerated at the Statesville Correctional Center. In late 2013, Nally fell while being escorted across Statesville's grounds in constrictive arm and leg restraints that prevented him from being able to cushion his fall. Nally immediately requested emergency medical attention based on pain in his left knee, rib cage, and jaw. Nally's request was disregarded, and he was transported to a court hearing. Upon his return, he was taken to the healthcare unit where he informed Dr. Davis of his fall-related injuries. Dr. Davis prescribed x-ray examinations of Nally's rib cage and jaw.

1

The next day, Nally experienced increased jaw pain and was unable to open his mouth. He sought emergency care but was informed that his symptoms did not constitute an emergency and that he should submit a routine request for healthcare. On December 13, 2013, Nally received an X-ray of his rib cage.

On December 23, 2013, Nally filed an emergency grievance. A month later, he was taken to the Healthcare Unit. By the time he was seen, he had regained the use of his mouth but was suffering from severe jaw and neck pain. Nally informed Dr. Mitchell of these symptoms, of the fact that his jaw popped when he opened his mouth, and of the fact that he still had not received the jaw x-ray prescribed on December 11, 2013. It is not clear what treatment Nally received at that appointment. On February 3, 2014, Nally finally received an x-ray of his jaw. On February 7, 2014, Nally was taken to the Healthcare Unit. Nally again informed staff that he was suffering pain from his fall-related injuries and requested medical care, but that request was denied and Nally was instructed to use sick call procedures. On February 14, 2014, Nally was taken to see a physician in the healthcare unit. It is unclear what treatment he received.

Between February 14, 2014, and August 15, 2014, Nally was seen by physicians including Dr. Mitchell, Dr. Martija, and Dr. Obaisi at least nine times. He continued to experience severe jaw pain, a popping sound in his ear when he opened his mouth, and neck pain. It is not alleged whether any diagnoses, treatments, or pain relief were provided during this time. Between September 3, 2014, and June 29, 2015, Nally continued to complain about his neck pain and jaw pain, but received no diagnosis, treatment, or pain relief relating to those symptoms. He also repeatedly requested information about the results of the jaw and neck x-ray examinations, but his requests were disregarded. Nally alleges that, during the time at issue, Wexford's policies required employees to deny medical care due to budgetary constraints, to refrain from referring inmates to

2

off-site specialists, and to maintain insufficient staffing levels. Nally further asserts that Wexford had access to his medical records, and therefore had knowledge of his serious medical need.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. The allegations must contain sufficient factual material to raise a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although Rule 8 does not require a plaintiff to plead particularized facts, the complaint must assert factual "allegations that raise a right to relief above the speculative level." *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011). When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018).

Wexford contends that Nally has not made sufficient allegations linking the perceived deficiencies in his medical treatment to an explicit or implicit Wexford policy, practice, or custom. Wexford, although a private corporation, is treated as a municipality for liability purposes under section 1983. *Rodriguez v. Plymouth Ambulance Serv.*, 577F.3d 816, 822 (7th Cir. 2009). In order for Wexford to be liable, Nally must allege a constitutional violation that was caused by an unconstitutional policy or custom of Wexford itself. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). If Nally alleges a direct policy that sanctions unconstitutional conditions, he must allege that it was the "direct cause" or "moving force" of the violation. *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000). Alternatively, if a plaintiff cannot identify a formal policy that is unconstitutional, he may instead show deliberate indifference through a pattern of conduct creating an inference that officials were aware of and condoned the unconstitutional misconduct. *Id.* It is not enough, however, to make only "bald allegations" that a purported policy is responsible for deficient treatment or to seek to attribute employee's exercise of discretion in the

performance of their duties to the entity. *Myrick v. Anglin*, 496 F. App'x 670, 675 (7th Cir. 2012); *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009).

Here, Wexford contends that Nally has failed to provide a factual basis for the Wexford policies that he claims resulted in the violation of his constitutional rights.  Nally's complaint alleges numerous policies, including (1) requiring employees to deny medical care due to budgetary constraints, (2) requiring employees not to refer inmates to off-site specialists, (3) requiring employees to ignore or minimize medical needs which might require off-site care, (4) maintaining insufficient staffing levels, (5) failing to properly process requests for medical care, (6) failing to train and supervise employees, (7) failing to discipline employees who neglected inmates' serious medical needs, (8) failing to require proper documentation, (9) failing to provide pain medication, and (10) delaying or cancelling scheduled appointments.

The facts, taken as they must be in Nally's favor, reflect that Nally suffered from severe ongoing pain and that, despite frequent medical requests and repeated visits to Wexford's practitioners, those symptoms were never diagnosed, managed, or treated.  Nally's allegations, however, do not suggest that he was unable to receive medical care due to insufficient staffing, that his medical requests were improperly processed, that appointments were improperly cancelled, or that that his poor care resulted from a failure to discipline employees.  Accordingly, Nally's allegations of policies to that effect are conclusory.  The length of Nally's undiagnosed and untreated "severe pain," however, does lend strong circumstantial support to his allegation that Wexford had policies requiring employees to deny care due to budgetary constraints, failed to train and supervise its employees, and had policies or practices against providing inmates with pain medication. Wexford's apparent inability to diagnose or treat the alleged symptoms also suggests the existence of a policy against referring patients to external subject-matter specialists.  Although this Court disfavors the incorporation of complaints from other cases, the Court is obligated to note that Nally

4

has also referenced multiple complaints asserting a similar policy weighing patient care against budgetary considerations. Although more specificity on Nally's part would be desirable, prior to discovery Nally has no way to gain specific information about the unconstitutional practices or procedures that he is alleging. Accordingly, it would be unfair to require Nally to provide more specific allegations about such policies or to require allegations concerning the experiences of other Wexford patients. Here, Nally's allegations regarding his medical history provide a sufficient basis for his allegations of policies restricting care based on budgetary constraints, of failing to train employees, and of failing to provide necessary pain medication, and those claims may therefore continue. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016); *see also Steele v. Wexford Health Sources, Inc.*, No. 17 C 6630, 2018 WL 2388429, at *7–8 (N.D. Ill. May 25, 2017) (Durkin, J.). Wexford's motion to dismiss is therefore granted in part and denied in part.

Date: 1/15/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge