UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM NALLY, ) | |
| ) | |
| Plaintiff, ) | Case No. 17-cv-02902 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| GHALIAH OBAISI, Independent Executor of ) | |
| the Estate of SALEH OBAISI, M.D., JAKE ) | |
| MATTHAYA, and JACKIE HARKINS, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, William Nally, brings this action against officers Jake Mathaya and Jackie Harkins (the "IDOC defendants") and Ghaliah Obaisi, independent executor of the estate of Saleh Obaisi[1] ("Dr. Obaisi"), alleging that defendants violated his rights under the Eighth Amendment by acting with deliberate indifference to his medical needs. Before the Court today are motions for summary judgment from the IDOC defendants [267] and Dr. Obaisi [273]. For the reasons laid out below, the Court denies the IDOC defendants' motion for summary judgment and grants Dr. Obaisi's motion for summary judgment.

**Background**

The following facts are undisputed unless otherwise noted. At all relevant times, Nally was incarcerated within the Illinois Department of Corrections ("IDOC") at the Stateville Correctional Facility ("Stateville"). Defendants Mathaya and Harkins were correctional officers employed by the IDOC at Stateville.

---

[1] Dr. Obaisi died on December 23, 2017.

1

Early in the morning of December 11, 2013, while defendants Mathaya and Harkins were transporting him to court for a writ, plaintiff slipped and fell in a pothole that was covered in snow outside of Stateville. (Dkt. 268 ¶¶ 7–8). He hurt his ribs, knee, neck, and jaw in the fall. Plaintiff stated in deposition testimony that he informed Mathaya and Harkins that he was in excruciating pain and requested emergency medical attention. (Dkt. 276 ¶ 4.) Defendants dispute this characterization. Officer Mathaya testified that he asked plaintiff if he was hurt and offered to take him to the hospital, to which plaintiff responded that he was fine and didn't need to go to the hospital. (Dkt. 274 ¶ 12).

After the fall, the IDOC defendants did not seek medical attention for plaintiff, and instead carried him into the van to transport him to court. (Dkt. 276 ¶ 5.) After Nally's court appearance, which ended at 9:20 am, Nally states the Mathaya and Harkins took a "detour" and they did not return to Stateville until 1:30 or 2:30 pm; Mathaya and Harkins dispute this, claiming they drove the approximate one hour drive straight back to Stateville (Dkts. 276 ¶¶ 6–7; 283 ¶¶ 6–7). Upon arrival at Stateville, defendants did not take plaintiff to receive medical attention, and he took himself to the healthcare wing to receive medical attention. (Dkt. 276 ¶¶ 8–9).

A medical provider then prescribed Tramadol, Toradol, and Naproxyn (all painkillers), and ordered an x-ray for plaintiff's ribs. (Dkt. 268 ¶ 12). Plaintiff's x-ray ultimately revealed that he did not have any rib fractures. (Dkt. 268, ¶ 13). Plaintiff continued to experience rib and jaw pain after his fall. In 2014, after plaintiff's jaw pain persisted, Dr. Mitchell, a dentist at Stateville, diagnosed plaintiff with temporomandibular joint disfunction ("TMJ"), or lockjaw, a condition that can be caused by trauma like plaintiff's fall. (Dkt. 276 ¶¶ 18–19). According to defendant's medical expert, TMJ is a chronic but intermittent condition that is treated with NSAIDs[2], heat, ice, and "changes in the mechanics of eating and chewing." (Dkt. 274 ¶ 27.) If TMJ results in breaks or fractures of the

---

[2] Non-steroidal anti-inflammatory drugs commonly used as pain relievers or to reduce inflammation.

2

temporomandibular joint, it can require maxillofacial surgery, which is "invasive and risky." (Dkt. 274 ¶ 28.) On February 4, 2014, a jaw x-ray ordered by Dr. Mitchell came back negative, indicating that plaintiff had normal jaw mobility. Per one of plaintiff's medical experts, though, this negative result can still be consistent with a TMJ diagnosis. (Dkt. 288 ¶ 8.) Plaintiff states that Dr. Mitchell then told him he needed an MRI or CT scan for his jaw, and that she would speak to Dr. Obaisi regarding this recommendation. (Dkt. 288 ¶ 15.) Defendants dispute this, and Dr. Mitchell did not recall this conversation in her deposition testimony. Furthermore, there is no evidence in the record shedding light on whether Dr. Mitchell and Dr. Obaisi ever spoke about Dr. Mitchell's purported recommendations for plaintiff's care.

On August 15, 2014, plaintiff saw Dr. Obaisi for complaints of neck pain and headaches, among other issues. Dr. Obaisi prescribed Tramadol and ordered an x-ray of Mr. Nally's neck. (Dkt. 274 ¶ 29). Dr. Obaisi ordered an additional Tramadol prescription on November 17, 2014. (Dkt. 274 ¶ 21). In July 2015, Dr. Obaisi arranged for a second x-ray of plaintiff's neck. It came back negative too. Plaintiff states that he complained to Dr. Obaisi multiple times about his jaw and neck pain. (Dkt. 188 ¶ 16). But Dr. Obaisi disputes this; per his medical records, plaintiff never saw Dr. Obaisi again about his neck or jaw pain before Dr. Obaisi's death on December 23, 2017. In 2016 and 2017, plaintiff had over 30 medical appointments (many of which with Dr. Obaisi) related to back pain, abdominal issues, medication refills, Diabetes, and Hepatitis C. He was referred to doctors at UIC hospital 5 times by Dr. Obaisi for treatment of his abdominal pain and other gastrointestinal issues.

**Legal Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*,

3

477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining whether a genuine issue of material fact exists, this Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, "[m]erely alleging a factual dispute cannot defeat the summary judgment motion." *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**Initial Matters**

Plaintiff seeks to strike a number of the IDOC defendants' statements of undisputed facts for relying on inadmissible evidence. Specifically, plaintiff argues that defendants failed to establish a foundation for the authenticity of defendants' exhibits 1 and 3–6, and in the alternative that these exhibits contain inadmissible hearsay.

When a party seeks to introduce evidence at summary judgment other than through depositions, answers to interrogatories, admissions, and affidavits, "they must be identified by affidavit or otherwise made admissible in evidence." *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985). Unless an exhibit is independently admissible (for instance, self-authenticating documents under Federal Rule of Evidence 902), a "foundational affidavit is required." *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, No. 07 C 2680, 2008 WL 4287002, at *7 (N.D. Ill. Sept. 11, 2008) (Gottschall, J.).

Exhibit 1 is a public record related to plaintiff's incarceration profile. (Dkt. 268-1.) Although the copy provided is not certified, and thus not self-authenticating under Federal Rule of Evidence 902(4), the Court hereby takes judicial notice of plaintiff's incarceration status. The remaining exhibits contain the IDOC's official writ list, plaintiff's medical records, and IDOC records of plaintiff's movements and whereabouts. The belated affidavit provided by defendants, *see*

4

Dkt. 282-1, is sufficient to lay a foundation for the authenticity of these records. Fed. R. Evid. 902(11). Importantly, these records were provided to plaintiff during discovery giving plaintiff "a fair opportunity to challenge them." *Id.* Having had a chance to review these documents, plaintiff does not challenge their authenticity but rather faults defendants for failing to provide an authenticating affidavit. Defendants' affidavit thus cures any deficiency here. Lastly, exhibits 3–6 are not hearsay because they are business records. Fed. R. Evid. 803(6). The Court thus denies plaintiff's request to strike any statements of fact arising from these exhibits.

**Discussion**

Prison officials and employees violate the Eighth Amendment's proscription against cruel and unusual punishment when they display "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference claims have two components, one objective and one subjective. First, the plaintiff must demonstrate that "he suffers from an objectively serious medical condition." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)). Second, plaintiff must show that defendants acted with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

I. <u>IDOC Defendants</u>

Plaintiff alleges that the IDOC defendants displayed deliberate indifference to plaintiff's serious medical needs when, after plaintiff fell and injured himself, they did not seek immediate medical attention and instead brought him to and from his court appearance, delaying his care by a number of hours. The IDOC defendants argue primarily that plaintiff did not have a serious medical condition, and thus cannot meet the first prong of the deliberate indifference standard. "Medical conditions far less critical than life-threatening" are encompassed by the serious medical condition standard. *Gutierrez v. Peters*, 111 F.3d 1364, 1370 (7th Cir. 1997) (internal quotation

omitted). If a trier of fact could conclude that a layperson would realize that someone's condition "would require a doctor's attention," then there is a material question of fact as to the objective prong of the deliberate indifference standard. *Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir. 2008) (internal quotation omitted). More specifically, the following can all be indications that a prisoner has a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez*, 111 F.3d at 1173 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992)).

Defendants argue that plaintiff's claim is entirely foreclosed by *Vinegar v. Braggs*, where a district court found that an inmate who fell and injured his "head, back, and knees" and did not ultimately incur "any sort of physical injuries outside of two bumps on the back of his head" did not experience a serious medical condition. 15 C 10625, 2019 WL 277747 at *5 (N.D. Ill. Jan. 22, 2019) (Kocoras, J.). But the facts there are not identical. While the plaintiff in *Vinegar* and Mr. Nally both fell and were injured, Nally received more than a bump on his head; he was ultimately diagnosed with TMJ. And indeed, the Seventh Circuit has presumed without even the need for analysis that TMJ can constitute a serious medical condition. *King v. Newbold*, 815 F. App'x 82, 84–85 (7th Cir. 2020). Plaintiff has thus, at minimum, established that there is a triable issue of fact as to whether he had a serious medical need.

The IDOC defendants additionally argue that plaintiff's claim fails because he cannot establish damages from the delay in medical care. Mr. Nally has said that he experienced severe pain during the 7–8 hours during which his medical care was allegedly delayed by the IDOC defendants. Because a reasonable jury could infer that Mr. Nally endured "needless suffering for no reason" and would thus be entitled to damages, his claim can survive summary judgment. *Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004).

6

II. <u>Dr. Obaisi</u>

Plaintiff alleges that Dr. Obaisi displayed deliberate indifference by failing to treat plaintiff's neck pain and TMJ-associated jaw pain. Dr. Obaisi challenges plaintiff's claim on both prongs of the deliberate indifference standard. Because the Court has already determined that a jury could find that plaintiff had a serious medical condition, it turns to the subjective element of deliberate indifference.

The burden to establish the subjective component of deliberate indifference is high. Negligence or even recklessness is insufficient. *Farmer v. Brennan*, 511 U.S. at 837. Mere disagreements between an inmate and his doctors cannot, without more, give rise to a viable Eighth Amendment claim. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). "The federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Pyle*s, 771 F.3d at 409 (citing *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). Doctors are "entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under these circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008).

The crux of plaintiff's claim is that Dr. Obaisi was deliberately indifferent when he failed to refer plaintiff to a specialist for his TMJ or provide treatment beyond prescription of pain medication for his TMJ and neck pain. Simply put, the record presented does not establish a triable question of fact as to whether Dr. Obaisi displayed the required culpability. First, plaintiff does not put forth evidence that Dr. Obaisi's treatment of his neck pain—which x-rays revealed was not tied to a fracture—departed from the standard of care, much less displayed deliberate indifference.

Second, the evidence presented as to Dr. Obaisi's treatment of plaintiff's jaw does not yield even an inference of deliberate indifference. Plaintiff contends that Dr. Obaisi refused to order an

7

MRI or CT scan after Dr. Mitchell recommended that he do so. But there is no evidence in the record that Dr. Mitchell recommended this course of action, much less that Dr. Obaisi ignored it. At best, the failure of Mr. Nally's medical team to order a jaw MRI or CT scan supports liability for Dr. Mitchell, who may have failed to order the proper testing or communicate with Dr. Obaisi. But Dr. Mitchell is no longer a party to this case. Plaintiff also contends that Dr. Obaisi failed to treat his TMJ despite multiple complaints of ongoing pain. The medical record does not provide any indication that plaintiff complained of jaw pain to Dr. Obaisi after his August 15, 2015 appointment. However, even if plaintiff's deposition testimony is true that he complained about jaw pain "on multiple occasions," Dr. Obaisi's prescription of painkillers, which is in line with the with the conservative standard of care explained by plaintiff's own medical expert. (Dkt. 288 ¶ 9.) And the "totality" of Dr. Obaisi's care, including numerous appointments, referrals, and follow-ups undermines plaintiff's contention that he was ignored. *See Dunigan v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999). The evidence simply does not suggest that Dr. Obaisi's care here was "blatantly inappropriate." *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005). Thus, the Court grants summary judgment for Dr. Obaisi.

**Conclusion**

For the foregoing reasons, the Court denies the IDOC defendants' motion for summary judgment [267] and grants Dr. Obaisi's motion for summary judgment [273].

IT IS SO ORDERED.

Date: 3/31/2023

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge